UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

JULIE SMITH, an Individual,

        Plaintiff,

v.

BLOOMTV LLC, a Colorado Limited Liability Company, MONICA MANLEY, an Individual, and DEVON KERNS, an Individual,

        Defendants.

## COMPLAINT AND JURY DEMAND

COMES NOW Plaintiff, Julie Smith ("Ms. Smith" or "Plaintiff"), by and through undersigned counsel, for her Complaint and Jury Demand against Defendants BloomTV LLC ("BloomTV"), Monica Manley ("Ms. Manley") and Devon Kerns ("Mr. Kerns") (collectively, "Defendants") states and avers as follows:

### PARTIES

1. Plaintiff is a resident of the State of Colorado.

2. Defendant BloomTV is a Colorado Limited Liability Company with a principal place of business located at 1101 E Bayaud Ave, E3003, Denver, CO 80209.

3. Ms. Manley is, upon information and belief, a resident of the State of Colorado

4. Mr. Kerns is, upon information and belief, a resident of the State of Colorado.

5. At all relevant times Defendants were Plaintiff's employer under Colorado and federal law.

### JURISDICTION AND VENUE

6. Jurisdiction is asserted pursuant to 28 U.S.C. §§ 1331, 1367(a).

7. Venue is proper in this United States District Court because the employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court, District of Colorado. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## GENERAL ALLEGATIONS

8. Ms. Smith is a Colorado resident, who has worked as an Executive Assistant for various companies since graduating from the University of Colorado with a Bachelor of Science in Finance.

9. BloomTV is a flower-focused streaming network, publishing educational and entertaining shows that revolve around flowers.

10. Ms. Manley is the CEO and Co-Founder of BloomTV, and in charge of its day-to-day operation.

11. Mr. Kerns is the other Co-Founder of BloomTV and is jointly in charge of day-to-day operations with Ms. Manley.

12. After interviewing with Ms. Manley and Mr. Kerns, Ms. Smith was offered the position of Executive Assistant with BloomTV by both of them on or about June 27, 2023.

13. The position included a salary of $125,000 and sign-on bonus of 10% of the Executive Assistant salary.

14. Ms. Smith commenced work on or about August 1, 2023.

15. Ms. Manley and Mr. Kerns were, at all relevant times, Ms. Smith's employers, along with BloomTV.

16. Ms. Manley and Mr. Kerns had managerial responsibilities over Ms. Smith and other BloomTV employees, exercising substantial control over the terms and conditions of employees' work with BloomTV including, but not limited to, controlling employee pay, hiring and firing, controlling employee schedules, setting employee benefits, and establishing employee duties and responsibilities.

17. After commencing work, Ms. Smith was paid a total of three paychecks before being told by Defendants in or around September 2023 that funding for BloomTV was delayed and wages could no longer be paid.

18. In connection therewith, Defendants asked Ms. Smith to forgo her salary as a "bridge loan" for only one pay period until funding came in but continue working. They offered Ms. Smith $5,000 to induce her to forego such salary for one pay period.

19. Ms. Smith was not paid after one pay period and was thereafter asked to continue her uncompensated work.

20. Defendants induced this continued, unpaid labor by promising total bonuses of $20,000 in consideration for Ms. Smith continuing to forego her salary.

21. In reliance on those promises, Ms. Smith continued her work for Defendants, believing their representations that Defendants would soon receive the necessary funding to pay their employees, including Ms. Smith's back wages and the promised $20,000 in bonuses.

22. Ms. Smith continued to work for BloomTV in her capacity as Executive Assistant for a total of nine months without receiving any compensation.

23. During those nine months, Ms. Smith repeatedly informed Defendants of the outstanding back wages owed to her.

24. Defendants, specifically Ms. Manley, always admitted such wages were due, albeit not paid.

25. Defendants continuously reported that funding was on its way, and requested that Ms. Smith and the rest of BloomTV's unpaid staff wait "just a little longer" before receiving payment for their work.

26. Meanwhile, Defendants benefited from the uncompensated labor of employees such as Ms. Smith.

27. Defendants never intended to pay their staff, and instead intended to string those like Ms. Smith along for as long as possible so that they could continue to exploit, and benefit from, the uncompensated labor.

28. On June 6, 2024, after nine months of providing uncompensated labor and Defendants' continual empty promises, Ms. Smith formally demanded in writing to Ms. Manley payment of her back wages ($83,333.29) and her $20,000 bonus within 14 days.

29. Ms. Manley did not dispute such amounts were due and owing and responded by asking Ms. Smith to "hang on for just a little longer" and if she did, she would be "taken care of."

30. Ms. Manley also warned Ms. Smith that a potential lawsuit would force BloomTV to "shut down" and "ensure that no one receives their payment."

31. Following multiple additional extensions, Ms. Smith finally terminated her unpaid employment with BloomTV and sent another wage demand via legal counsel on August 21, 2024, demanding payment of Ms. Smith's unpaid wages within 14 days.

32. In response to Ms. Smith's demand, Defendants promised to pay the full demanded amount of $114,333.29, which includes the back wages, agreed-upon bonus and attorney fees, by October 11, 2024.

33. Ms. Smith agreed to hold a lawsuit in abeyance until October 11, 2024, but indicated that any release would not be effective until payment was received, and that no further extensions to Defendants' deadline would be permissible for Ms. Smith.

34. Defendants acknowledged Ms. Smith's specifications and agreed that there would be no change to the October 11 deadline to pay.

35. To date, Ms. Smith has received none of the compensation due her and repeatedly promised her by Defendants.

36. Instead, on October 11, Defendants asked for yet another extension to pay Ms. Smith.

37. Despite never disputing that $83,333.29 in back wages and a $20,000 bonus are due and owing, Defendants have failed to pay Ms. Smith such amounts.

38. Ms. Smith remained at BloomTV as an employee for nine months without any compensation, relying on Defendants' repeated promise that backpay was forthcoming.

39. Ms. Smith left her unpaid employment with BloomTV in May 2024, and sought employment elsewhere after working for most of the year without receiving any compensation from her employers.

40. Had Ms. Smith known that Defendants'' promises were false, and they had no intention of paying her, including for the nine months she worked for free at BloomTV, she would have immediately departed BloomTV and found a different job, which would have paid her for those nine months.

**FIRST CLAIM FOR RELIEF**
**(Violation of the Fair Labor Standards Act—29 U.S.C. § 201, *et seq*. against Defendants)**

41. Plaintiff realleges and incorporates by reference the foregoing paragraphs as though fully set forth therein.

42. At all relevant times, Defendants "employed" Plaintiff and were Plaintiff's "employers" as those terms are defined by the FLSA. 29 U.S.C. § 203(d), (g).

43. At all relevant times, Plaintiff was Defendants' "employee" as that term is defined by the Fair Labor Standards Act. 29 U.S.C. § 203(e).

44. Defendants violated the FLSA, when they failed to pay Plaintiff wages for her time employed with Defendants. 29 U.S.C. § 206(a)(1).

45. Defendants were aware of the backpay, and wages owed to Plaintiff.

46. Defendants' failure to pay wages was willful.

47. Plaintiff has been damaged by Defendants' failure to pay her wages in an amount to be proven at trial.

**SECOND CLAIM FOR RELIEF**
**(Violation of the Colorado Wage Act—C.R.S. § 8-4-101, *et seq*. against Defendants)**

48. Plaintiff realleges and incorporates by reference the foregoing paragraphs as though fully set forth therein.

49. Defendants were Plaintiff's "employers".

50. Plaintiff was Defendants' "employee".

51. When Plaintiff left her employment at BloomTV in May 2024, she was owed $83,333.29 in wages and $20,000 in bonuses.

52. Under Colorado law, Plaintiff's final owed wages were due the following day.

53. Defendants refused to pay the final wages, forcing Plaintiff to send repeated written demands.

54. Plaintiff did not receive the wages within 14 days of her first written demand on June 6, 2024, nor within 14 days of her second written demand sent August 21, 2024.

55. Defendants willfully failed to pay Plaintiff her final wages.

56. Defendants are liable for penalties under Colorado law in connection with their willful failure to pay final wages.

57. Plaintiff has been damaged by Defendants' failure to pay her final wages in an amount to be proven at trial.

## THIRD CLAIM FOR RELIEF
### (Fraudulent Misrepresentation against Defendants)

58. Plaintiff realleges and incorporates by reference the foregoing paragraphs as though fully set forth therein.

59. Defendants promised Ms. Smith $20,000 in bonuses if she forwent her salary until funding was received.

60. Defendants further promised that funding would be obtained, and her due and owing bonus and salary would be paid.

61. Defendants made these promises to induce Plaintiff's continued, uncompensated work.

62. Defendants continuously repeated these promises, with the knowledge that they were false because Defendants knew they lacked the funding, or prospective funding, to ever pay any bonus, or her backpay.

63. Plaintiff justifiably relied on these representations, staying in her capacity as Executive Assistant with BloomTV for nine months without receiving any compensation for her

work with the expectation that Defendants would be receiving funding and paying her bonus and unpaid wages.

64. Had Plaintiff been aware that Defendants' representations were false – and that she would never receive pay for her work – she would have left BloomTV and sought employment elsewhere.

65. Plaintiff has been damaged by Defendants' fraudulent misrepresentation in an amount to be proven at trial.

## FOURTH CLAIM FOR RELIEF
**(Promissory Estoppel against Defendants)**

66. Plaintiff realleges and incorporates by reference the foregoing paragraphs as though fully set forth therein.

67. Defendants made promises to Ms. Smith that she would be paid $20,000 in bonuses if she forwent her salary until funding was received. Defendants made these promises both verbally and in writing.

68. Defendants further promised that funding would be obtained, and her due and owing bonus and salary would be paid.

69. Defendants made the promises foreseeing that such promises would induce Ms. Smith to accept the job offer from Defendants and, additionally, continue her performance as Executive Assistant for BloomTV.

70. Ms. Smith relied on the promises to her detriment, including leaving her previous employment for and accepting employment with BloomTV, and forgoing other possible employment opportunities. Further, Plaintiff diligently performed her services for BloomTV

71. Defendants failed to fulfill their promises, which has caused Plaintiff to suffer injuries, losses and damages in an amount to be proven at trial.

WHEREFORE, Plaintiffs respectfully request that this Court (1) enter judgment for Plaintiff and against Defendants as set forth herein; (2) award Plaintiffs damages as allowed by the law and in an amount to be determined including all liquidated, penalty, and exemplary damages; (3) award Plaintiff prejudgment interest, post-judgment interest, and costs, including expert fees, as allowable by the law; and (4) award Plaintiff such other relief as this Court deems just and proper:

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE**

DATED this 18th day of October, 2024.

        Respectfully Submitted,

        ALLEN VELLONE WOLF HELFRICH & FACTOR P.C.

        By: */s/ Jeremy T. Jonsen*
        Jeremy T. Jonsen, #48859
        Jennifer E. Schlatter, #30626
        1600 Stout Street, Suite 1900
        Denver, Colorado 80202
        Phone: (303) 534-4499
        E-mail: jjonsen@allen-vellone.com
        E-mail: jschlatter@allen-vellone.com
        ATTORNEYS FOR THE PLAINTIFF

PLAINTIFF'S ADDRESS:
10649 Worthington Circle
Parker, Colorado 80134

*In accordance with C.R.C.P. 121 § 1-26(7), a printed copy of this document with original signatures is being maintained by the filing party and will be made available for inspection by other parties or the Court upon request.*